Collie *v*. Little River Co-Op

5-2991                                                    370 S. W. 2d 62

Opinion delivered May 27, 1963.

[Rehearing denied September 9, 1963.]

*Bruce Ivy*, for appellant.

*Ed B. Cook*, for appellee.

Jim Johnson, Associate Justice. Appellants, Jessie Collie and others, are preferred stockholders in appellee, Little River Cooperative, Inc., and are seeking an accounting and an order compelling appellee to comply with its articles of incorporation and by-laws, which provide that an amount not exceeding six per cent of the par value of the fully paid up preferred stock shall be set aside for payment of dividends on such stock, which dividends shall have preference over all other dividends and distributions, and that after such payment there shall be first reserved an amount equal to not less than five per cent of the net savings (net profits) for the purposes of establishing and maintaining an allocated reserve of not less than twenty-five per cent of the aggregate value of all outstanding stock, and that whenever the total amount exceeds this twenty-five per cent the board of directors may apply such excess to paying off ratably by years the oldest outstanding preferred stock in the same order as originally issued. In addition to an accounting, appellants prayed that appellee be enjoined from distributing any patronage refunds (an annual refund to customers of the gin) until the six per cent

dividends have been paid, that appellee furnish appellants a financial statement of the corporation, that appellee be ordered to cancel all preferred stock issued in lieu of cash patronage refunds during those years that the business operated at a loss, that appellee be required to build up and maintain an allocated reserve of not less than twenty-five per cent of the aggregate par value of all the stock, and that appellee be ordered to apply all of the excess of the twenty-five per cent to redemption or retirement of preferred stock in accordance with the by-laws. The trial court found the issues in favor of appellee and dismissed the complaint, from which appellants appeal.

For reversal appellants contend that the trial court erred by ruling, in effect, that appellee's directors had not abused their discretion in the matters of dividends and maintaining the reserve, or that appellants failed to show such abuse.

The Little River Cooperative, Inc., was organized in 1946 under Act 116 of the Acts of 1921 (Ark. Stats. §§ 77-901 et seq.), Cooperative Marketing Associations, which provides that five or more persons engaged in the production of agricultural products may form a non-profit, cooperative association for processing, harvesting, marketing, etc., the products of the members. The principal products of this cooperative are cotton and cotton seed. It is empowered to do business with non-members so long as the business transacted with non-members is not greater in value than that transacted with members. The authorized 100 shares of common stock may be owned only by producers who agree to patronize the co-op, and no one may hold more than one share, or transfer it without approval of the board of directors. Common stock does not bear dividends.

Article 7, Sections 3 and 4 of the articles of incorporation read as follows:

"Section 3. The preferred stock of the association shall bear non-cumulative dividends not to exceed six per cent (6%) per annum if earned and declared by the board of directors; and such dividends shall have prefer-

ence over all other dividends or distributions thereof declared in any year. At the discretion of the board of directors, all dividends on preferred stock, or any part thereof, may be paid in additional certificates of preferred stock and/or credits on preferred stock. The preferred stock shall carry no voting rights, and such stock, or any part thereof may be redeemed or retired upon call of the board of directors from time to time, provided said stock is called and retired in the same order as originally issued. All such preferred stock so retired shall be paid for in cash at the par value thereof, plus any dividend declared thereon and unpaid; and such stock shall not bear dividends after the date fixed in the call for its retirement. Upon distribution of the assets of the association, in the event of dissolution or liquidation, the holders of prefererd stock, plus any dividends declared thereon and unpaid, before any distribution is made on the common stock.

"Section 4. After providing for dividends on preferred stock if earned and declared by the board of directors, any balance of annual net income then remaining shall be allocated and/or credited to all patrons, members and non-members alike, on a patronage basis, including such amounts as may be set aside in reserve by the vote of the directors. Any distribution of reserved and other allocated savings at any time shall be made on the basis of patronage in such methods as may be prescribed in the by-laws or ordered by the board of directors."

By-Laws Article X, Section 2, Allocation of Savings, reads as follows:

"The net savings, determined in the manner provided for in Section 1 of this Article, shall be allocated and distributed in the following order and manner:

"(a) An amount not exceeding six per cent (6%) of the par value of the fully paid-up shares of preferred stock outstanding shall be set aside for payment of dividends on such stock.

"(b) The remainder of the net savings shall be allocated to all patrons of the association on a patronage

basis. The basis of allocation shall be prescribed by the board of directors and may show the division of net savings of each activity, or business of the association.

"(c) Before any distribution is made of the net savings after provision for the payment of dividends on stock, there shall first be reserved an amount equal to not less than five per cent (5%) of the net savings for the purpose of establishing, building up and maintaining an allocated reserve of not less than twenty-five per cent (25%) of the aggregate par value of all outstanding capital stock. Such deduction shall be made from the net income of each activity or business of the association as prescribed by the board of directors.

Appellants own about 2.3% of the preferred stock of the co-op, which they obtained in 1956. The co-op paid a 5% dividend on preferred stock in 1956, 4% in 1957, 2% in 1958, none in 1959, 2% in 1960, 3% in 1961 and 4% in 1962.

The general reserve of the association was approximately $4,000.00 as of March 31, 1961 (the end of the fiscal year). Over the years, losses resulting from various ventures of the co-op in the amounts of $5,000, $16,-000 and $1,000 have been charged against the general reserve. According to the testimony of the co-op manager, there would have been approximately $29,000 in the general reserve as of March 31, 1961, if these losses had not been deducted from the reserve.

In 1960 the net savings (profits) was $21,744.52; a 2% dividend, $4,100.00, was distributed to the owners of the 16,790 shares of outstanding preferred stock; the balance of the net profit ($17,744.52) was distributed to the 26 member and the few non-member patrons, 95% in cash and 5% in the general reserve to the patrons' credit. In 1962 the net savings (profit) was $44,157.96; a 4% dividend, $8,200.63, was paid to the preferred stockholders; $34,752.50 was distributed as advance patronage refunds. These years were selected at random from the record before us.

Appellants contend that this method of distribution of savings discriminates against the preferred stock-

holders in that there is no prospect for retirement or redemption of the preferred stock, and that although the co-op has shown a profit every year except 1959, a 6% dividend has never been paid, all of which is contended to be an abuse of discretion.

The preferred stock is non-voting stock.

From the record it is clear that the operation, management and control of this enterprise is absolutely vested in the hands of some 26 owners of common stock. From this group has been selected the board of directors who are responsible for the handling of the funds of the co-op. These people along with five or six non-members generally constitute the patrons of the gin here in question. It is undisputed that for many years the gin earned more than enough to pay the maximum six per cent dividend to the preferred stockholders, (and to set aside the minimum five per cent of profits for the allocated reserve), but rather than pay this amount the board voted to pay to themselves and the other patrons of the gin a lion's share of the savings. One of appellee's directors testified that he owns one share of common stock — one $100 share — and has no preferred stock; that for $100 he got in on the operation and last year alone (1961) saved $3,800.00. Appellee's explanation of the handling of the funds of the gin in this manner was, ''In order to keep the ginnings up [retain their patrons] so we can pay anything. If we pay six per cent every year, there would come a time when there wouldn't be any earnings left to pay anybody anything.'' Following this testimony the manager of the gin testified that, ''We are putting in new high capacity machinery at a cost of $101,000.00, in order to take care of the business. . . . We lost a thousand bales or better last year in not being able to gin it.'' Each year at the annual meeting, according to the testimony of one of the directors, the matter of setting up a fund to retire the preferred stock is brought up, and always voted down.

The co-op was built with borrowed money, that is, preferred stock, and there is now outstanding 16,790 shares of preferred stock representing, at $10 per share,

$167,900.00. The 26 active and voting members of the co-op each have one share of common stock worth $100.00, for a total of $2,600.00. (Some of the active members also own substantial amounts of preferred stock. This is not in issue.) The co-op manager testified that there is no market value for the preferred stock. The C. P. A. for the co-op testified that based on ordinary losses, (under the system of distribution practiced by the co-op) it would be very hard to ever build up the general reserve to twenty-five per cent.

It is axiomatic that the owners of a profitable business are entitled to a reasonable share of the profits of that business as well as being able to sell their interest in that profitable business. That is one advantage of our capitalistic system. In the instant case, appellants have received some share of the profits, but have so far been effectively denied any assurance that their stock will be redeemed, while the active members enjoy a profitable return from the investment of the preferred stockholders, all of which impels us to the conclusion that appellee's directors abused their discretion in failing to develop or maintain a rational balance between the amounts paid the preferred stockholders and the active members, and in failing to provide, maintain and build the allocated reserve required by the articles of incorporation.

We consider this case to be controlled by *Driver* v. *Producers Cooperative,* 233 Ark. 334, 345 S. W. 2d 16, and remand the cause for further development in the light of that opinion.

Reversed and remanded.